IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FARRAH KELLY, | No. 4:22-CV-01940 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| JOSHUA BELL, JUSTIN SNYDER, and CITY OF WILLIAMSPORT, | |
| Defendants. | |

**MEMORANDUM OPINION**

**APRIL 28, 2023**

The Williamsport Bureau of Police seized Plaintiff Farrah Kelly's car pursuant to a valid warrant, but after completing the authorized search, the Bureau refused to give it back. For nearly nine weeks, the City of Williamsport held Kelly's car without any valid justification. Accordingly, Kelly has sued the City as well as various police officers involved in the car's continued detention, alleging violations of her rights under the Fourth and Fifth Amendments to the Constitution of the United States.

The Defendants now move to dismiss Kelly's claims. But a government's unjustified refusal to return personal property after a lawful initial seizure indisputably implicates the property owner's constitutional rights; the only question is which rights. Consistent with the leading Circuit authority on the matter, this Court finds that constitutional challenges like Kelly's sound in the

Fifth Amendment—not the Fourth. As such, Kelly's Fifth Amendment claim may proceed, but her Fourth Amendment claims cannot.

## I.   BACKGROUND

On April 5, 2022, the Williamsport Bureau of Police obtained a warrant to search Kelly's car.[1] The warrant indicates that the police were searching for certain instrumentalities and other evidence of a crime—specifically, firearms, ammunition, and certain clothing items.[2] Officers seized Kelly's car that morning and completed the search by no later than April 7, 2022.[3]

After the police seized her car, Kelly consistently and persistently sought to get it back.[4] Indeed, she called the Bureau of Police daily, leaving messages for Defendants Joshua Bell, a Captain with the Bureau, and Justin Snyder, the Bureau's Chief of Police.[5] After getting no response, she called the Office of the Mayor of the City of Williamsport.[6] A woman at the Mayor's Office informed her there was "nothing the Mayor's Office could do about her car," but the woman promised to take Kelly's name and telephone number "and pass it along for someone to call her back."[7]

---

1   Doc. 1-2, Ex. A (Search Warrant).
2   *Id.*
3   Doc. 1 (Compl.) ¶¶ 14–16.
4   *Id.* ¶¶ 17–28.
5   *Id.* ¶ 19.
6   *Id.* ¶ 20.
7   *Id.*

Not long after that, Bell called Kelly.[8] He refused to give Kelly information about her car and "stated that he was getting further search warrants."[9] But according to Kelly, Bell did not request or obtain any additional warrants.[10]

This back-and-forth continued into May, with Kelly calling but receiving no response, no update.[11] She called the Mayor's Office again.[12] She called the local District Attorney's Office.[13] But her efforts proved fruitless.[14]

Finally, on May 9, 2022, Kelly (through her attorney) sent Chief Snyder a letter informing him of her situation and stating that if her car was not returned by May 11, 2022, she would file a Motion for Return of Property with the Court of Common Pleas of Lycoming County, Pennsylvania.[15] The deadline came and went, but the car was not returned.[16] So, on May 13, 2022, Kelly filed the Motion for Return of Property, which was served on the Williamsport Bureau of Police five days later.[17] The Court of Common Pleas scheduled a hearing on Kelly's motion for June 6, 2022, but four days before the hearing, Kelly's car was returned without explanation.[18] To date, Kelly has not been compensated for the nearly nine weeks

---

[8] *Id.* ¶ 21.
[9] *Id.* ¶ 22.
[10] *Id.* ¶¶ 23–24.
[11] *Id.* ¶ 25.
[12] *Id.* ¶ 26.
[13] *Id.* ¶ 27.
[14] *Id.*
[15] *Id.* ¶ 29 (citing Doc. 1-3, Ex. B (May 9, 2022, Letter to Chief Snyder)).
[16] *Id.* ¶ 30.
[17] *Id.* ¶¶ 31–32.
[18] *Id.* ¶¶ 33–34.

the Williamsport Bureau of Police held her car following its execution of the April 2022 search warrant.[19]

In December 2022, Kelly initiated the instant action, naming as defendants Officer Bell, Chief Snyder, and the City of Williamsport.[20] She brought three claims, all under 42 U.S.C. § 1983, alleging constitutional violations.[21] Count I asserts that Officer Bell and Chief Snyder unlawfully seized Kelly's personal property after the expiration of a warrant in violation of the Fourth Amendment of the Constitution of the United States.[22] Count II is a *Monell* claim against the City of Williamsport based on Officer Bell and Chief Snyder's allegedly unlawful retention of Kelly's car.[23] And Count III, brought against all three Defendants, asserts unlawful taking of property in violation of the Fifth Amendment.[24]

The Defendants moved to dismiss the Complaint on January 3, 2023.[25] That motion has been fully briefed and is now ripe for disposition.[26]

## II.   LAW

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which

---

[19] *Id.* ¶ 52.
[20] Doc. 1 (Compl.).
[21] *Id.*
[22] *Id.* ¶¶ 36–39.
[23] *Id.* ¶¶ 40–48.
[24] *Id.* ¶¶ 49–52.
[25] Doc. 7 (Mot. to Dismiss).
[26] Doc. 8 (Defs' Br.); Doc. 9 (Kelly's Opp.).

relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*²⁷ and *Ashcroft v. Iqbal*,²⁸ "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"²⁹ The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) assume the veracity of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."³⁰

### III.  ANALYSIS

Based on the City of Williamsport's failure to return her car for nearly nine weeks following the initial lawful seizure, Kelly brings three constitutional claims concerning two separate amendments: two claims alleging violations of the Fourth Amendment, and one alleging a violation of the Fifth. The Fourth Amendment protects individuals against unreasonable searches and seizures,³¹ while the Fifth

---

27  550 U.S. 544 (2007).
28  556 U.S. 662 (2009).
29  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
30  *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotation marks, brackets, and citations omitted).
31  U.S. Const. amend. IV.

Amendment provides recourse where "private property [is] taken for public use, without just compensation."[32]

The Third Circuit has not addressed the interplay between these amendments as it relates to the Government's refusal to return an individual's person property that was previously seized pursuant to a valid warrant. The United States Court of Appeals for the First Circuit, however, has held that "to the extent a plaintiff may challenge on federal constitutional grounds the [G]overnment's retention of personal property after a lawful initial seizure," the challenge "sounds in the Fifth Amendment rather than in the Fourth Amendment."[33] That ruling accords with decisions rendered by the United States Courts of Appeals for the Second, Sixth,

---

[32] U.S. Const. amend. V.
[33] *Denault v. Ahern*, 857 F.3d 76, 84 (1st Cir. 2017), *superseded on other grounds as stated in Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1 (1st Cir. 2022).

Seventh, Eighth, and Tenth Circuits,[34] and has been endorsed by other courts within this circuit.[35]

For its part, the Third Circuit recently affirmed the viability of Fifth Amendment takings clause claims based on a government's improper retention of personal property previously seized via warrant.[36] Specifically, in *Frein v. Pennsylvania State Police*, the Third Circuit held that "[a]lthough police may seize potential evidence using a warrant, they may not keep it forever."[37] The Third

---

[34] *See Shaul v. Cherry Valley-Springfield Central School Dist.*, 363 F.3d 177, 187 (2d Cir. 2004) ("Where, as in this case, an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure."); *Fox v. Van Oosterum*, 176 F.3d 342, 350 (6th Cir. 1999) (holding that "[t]he refusal to return the [property] here neither brought about an additional seizure nor changed the character of the [initial] seizure from a reasonable one to an unreasonable one because the seizure was already complete when the defendants refused to return [the property]"); *Lee v. City of Chicago*, 330 F.3d 456, 466 (7th Cir. 2003) (explaining that "a government's decision regarding how and when to return once lawfully obtained property raises different issues, which the test, history, and judicial interpretations of the Fourth Amendment do not illuminate") (internal quotation marks and citation omitted); *Gilmore v. City of Minneapolis*, 837 F.3d 827, 838 (8th Cir. 2016) (holding that because the police's seizure of the plaintiff's property was valid, he "has not presented a clearly established right preventing the destruction of his sign under the Fourth Amendment"); *Snider v. Lincoln County Board of County Commissioners*, 313 F. App'x 85, 92–93 (10th Cir. 2008) (holding that "[t]o the extent the [plaintiffs] allege a procedural due process violation related to the continued retention of their property, as opposed to the initial seizure, the district court erred in concluding that their claim only raised rights explicitly protected by the Fourth Amendment," explaining that although "the propriety of the initial seizure by police" must be evaluated "under the Fourth Amendment," the "ultimate disposition of the property had to comply with the protections of procedural due process [under the Fifth and Fourteenth Amendments]").

[35] *See, e.g.*, *Hammond v. Lancaster City Bureau of Police*, 2021 WL 5987734, at *4 (E.D. Pa. Dec. 16, 2021) ("agreeing with those courts that have addressed the issue" in finding that "the failure to return [the plaintiff's] lawfully seized property does not implicate his Fourth Amendment right against unlawful search and seizure").

[36] *See Frein v. Pennsylvania State Police*, 47 F.4th 247, 251–53 (3d Cir. 2022) (overruling district court's dismissal of Fifth Amendment takings clause claim based on the police's refusal to return the plaintiffs' firearms following a lawful seizure even though the justification for the seizure had long since expired).

[37] *Id.* at 250.

7

Circuit explained, "[i]t is well settled that the [G]overnment is permitted to seize evidence for use in investigation and trial, but that such property must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture"; absent the Government's use of criminal or civil forfeiture, the owners of the property withheld despite the conclusion of criminal proceedings "have a takings claim" if they "were never compensated."[38]

Against this legal backdrop, the Court finds that the circumstances at issue here do not support a claim under the Fourth Amendment. As both parties acknowledge, the Complaint "does not pertain to the initial seizure of [Kelly's] vehicle."[39] Kelly instead premises her claims solely on the City of Williamsport's alleged "unlawful retention" of the car "despite [Kelly's] immediate, repeated, and continuous requests for its return."[40] A constitutional challenge, like this one, to the Government's "retention of personal property after a lawful initial seizure . . . sounds in the Fifth Amendment rather than in the Fourth Amendment."[41] Accordingly, neither Kelly's § 1983 claim against Officer Bell and Chief Snyder (alleging unlawful seizure of property after the expiration of a warrant in violation of the Fourth Amendment) nor her *Monell* claim against the City of Williamsport

---

[38] *Id*. at 253.
[39] Doc. 9 (Kelly's Opp.) at 14, *accord* Doc. 8 (Defs' Br.) at 5 ("Simply put, [Kelly] does not dispute the validity of the April 5, 2022, search warrant.").
[40] Doc. 9 (Kelly's Opp.) at 14, *accord* Doc. 8 (Defs' Br.) at 5 ("Instead, she avers that the properly seized property was not timely returned to her and that constitutes a constitutional violation.").
[41] *Denault*, 857 F.3d at 84.

(premised on Officer Bell and Chief Snyder's allegedly unlawful retention of property under the Fourth Amendment) may proceed.[42]

To be sure, Kelly disputes this. According to Kelly, the Third Circuit "demonstrated its approval of Fourth Amendment claims premised upon retention of property after lawful seizure" in two separate rulings: *Frein*[43] and *Reitz v. County of Bucks*.[44] The Court disagrees.

First, Kelly cites *Frein* for the proposition that she "has a valid Fourth Amendment claim" because she "immediately, continuously, and persistently requested the return of her vehicle and the Defendants have presented no valid legal justification for retaining the vehicle."[45] But, as discussed, the relevant claim in that case involved an alleged violation of the plaintiffs' Fifth Amendment rights based on the Commonwealth of Pennsylvania's refusal to return the plaintiffs' lawfully seized personal property; the plaintiffs in *Frein* did not bring a claim under the Fourth Amendment.[46] Although the Third Circuit noted that "[a] new warrant or other proof of continued compliance with the Fourth Amendment could

---

[42] For the *Monell* claim, without an underlying constitutional violation against Officer Bell and Chief Snyder, Kelly cannot sustain a claim against the City of Williamsport for failing to train them or for adopting a policy that caused them to violate her rights. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 692 (1978) (noting that the Act "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights").
[43] 47 F.4th at 250–253.
[44] 125 F.3d 139 (3d Cir. 1997).
[45] *See* Doc. 9 (Kelly's Opp.) at 8–12 (cleaned up).
[46] *See Frein*, 47 F.4th at 250–253.

justify retention for collateral review, say, or a new investigation or prosecution,"[47] that passage simply affirms that a new warrant authorizing continued detention of personal property would render the government's retention of that property constitutionally permissible. It does not authorize Fourth Amendment unreasonable seizure claims based on the failure to return personal property that was initially lawfully seized.

Second, Kelly notes that in *Reitz*, the Third Circuit reversed a district court ruling granting the defendants summary judgment on constitutional claims under the Second, Fourth, Eighth, and Fourteenth Amendments concerning the local government's loss, destruction, or untimely return of personal property.[48] But, as Kelly acknowledges, the Third Circuit in *Reitz* did not identify which of the constitutional claims at issue related to the detention of personal property or analyze which constitutional provisions are implicated by a government's unwillingness to return personal property.[49] Therefore, this Court does not deem *Reitz*—decided in 1997, twenty years before the referenced First Circuit ruling and at least two years before any of the relevant decisions from the Second, Sixth, Seventh, Eighth, and Tenth Circuits—as indicating disagreement with the legal authority cited here.

---

[47]  *Id*. at 253.
[48]  Doc. 9 (Kelly's Opp.) at 12–13 (*citing Reitz*, 125 F.3d at 142–44).
[49]  *Id*.

That said, Kelly's Fifth Amendment claim may proceed. Consistent with the Third Circuit's ruling in *Frein*, Kelly's claim "checks all the Fifth Amendment boxes."[50] Her car is indisputably "private property."[51] It was "'taken' by the officials" and "pressed . . . into 'public use'": the Williamsport Bureau of Police seized Kelly's car as part of a criminal investigation, believing that a search of the vehicle would reveal instrumentalities and other evidence of a crime.[52] And Kelly "never got[] a dime, let alone 'just compensation'" for the nearly nine weeks the Williamsport Bureau of Police held her car after completing the initial lawful search.[53] Accordingly, the Defendants' motion to dismiss Count III is denied.[54]

---

[50] *Frein*, 47 4th at 251.
[51] *Id*. (quoting U.S. Const. amend. V).
[52] *Id*.; *see also* Doc. 1 (Compl.) ¶¶ 11–12 (noting that Kelly's car "was seized by the Williamsport Bureau of Police" pursuant to a warrant, which "indicated that the items to be searched for and seized included firearms, ammunition, and clothing") (citing Doc. 1-2, Ex. A (Search Warrant)).
[53] *Frein*, 47 4th at 251 (citing U.S. Const. amend. V); *see also* Doc. 1 (Compl.) ¶¶ 14–16, 34, 52.
[54] Separately, the Defendants ask this Court to dismiss the Complaint as to the individual defendants, Officer Bell and Chief Snyder, because (1) Kelly fails to allege facts demonstrating their personal involvement in the alleged constitutional violations, and (2) they are qualifiedly immune. Doc. 8 (Defs' Br.) at 9–12. But for Count III, neither argument has merit. First, the allegations in the Complaint demonstrate Officer Bell's and Chief Snyder's personal involvement in alleged constitutional violation at issue—that is, the unlawful retention of Kelly's car after the initial lawful search was complete. *See* Doc. 1 (Compl.) ¶¶ 22 (detailing phone call with Officer Bell in which he "refused to give [Kelly] any information about her vehicle" and refused to give it back because "he was getting further search warrants"), 29 (describing notice Kelly provided Chief Snyder regarding an impending court filing if the Bureau of Police—which he led as Chief—did not return her car). Second, the Third Circuit's ruling in *Frein* establishes that Officer Bell's and Chief Snyder's alleged actions violated Kelly's rights secured by the Fifth Amendment and that the unlawfulness of their conduct was clearly established at the time it occurred. 47 4th at 251–53. That defeats their claim to qualified immunity. *See District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018).

## IV. CONCLUSION

The Constitution permits police officers to seize an individual's personal property if they first obtain a warrant authorizing the seizure. It does not, however, allow officers to retain that property indefinitely, well after the basis for the warrant has expired. In such circumstances, a plaintiff can raise a constitutional challenge to the Government's refusal to return her personal property, though that challenge sounds not in the Fourth Amendment, but in the Fifth Amendment. Accordingly, the Defendants' motion to dismiss is granted in part, denied in part: Kelly's Fourth Amendment claims (Counts I and II) are dismissed, but her Fifth Amendment claim (Count III) may proceed.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge