IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FARRAH KELLY,<br>     Plaintiff | : No. 4:22cv1940<br>:<br>: (Judge Munley) |
| v. | : |
| JOSHUA BELL, JUSTIN SNYDER,<br>and CITY OF WILLIAMSPORT,<br>     Defendants | : |
| and | : |
| CHRISTOPHER SALISBURY and<br>CITY OF WILLIAMSPORT,<br>     Consolidated Defendants | : |

## MEMORANDUM

Before the court is a motion to dismiss filed by Defendants Christopher Salisbury and City of Williamsport in this action brought pursuant to 42 U.S.C. § 1983 ("Section 1983").

**Background**

On April 5, 2022, the Williamsport Bureau of Police obtained a warrant to search Plaintiff Farrah Kelly's vehicle.[1] (Doc. 35, Compl. ¶ 8). Defendant Salisbury signed the warrant application as the affiant. (Id. Ex. A, ECF p. 13).

---

[1] These brief background facts are derived from plaintiff's amended complaint and the exhibits attached thereto. At this stage of the proceedings, the court must accept all factual allegations in the amended complaint as true. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The court makes no determination, however, as to the ultimate veracity of these assertions.

Per the application, the Williamsport police were investigating an incident involving two other individuals, identified as Beyah and Durrant, which occurred on April 3, 2022.[2] (Id.) Salisbury indicated that Beyah operated Kelly's vehicle in relation to the incident. (Id.) The police department sought evidence "consistent with evidence on scene," specifically 9mm firearms, ammunition, and certain clothing worn by the other individuals. (Id.) After Judge Butts from the Lycoming County Court of Common Pleas authorized the search warrant, the Williamsport police department seized Kelly's vehicle. (Id. ¶ 8 & Ex. A).

The next day, April 6, 2022, Kelly contacted the police department. (Id. ¶ 14). She spoke to Defendant Joshua Bell. (Id.) Kelly met with an unknown officer at the police station that same day. (Id. ¶ 15). Kelly provided the officer with keys to the vehicle. (Id.) The police then searched Kelly's car pursuant to the warrant on April 7, 2022 at 8:00 AM. (Id. ¶ 35). No items were found, and no property was seized as the result of the search. (Id. ¶ 36).

Kelly then encountered difficulties recovering her vehicle. She called the police department frequently, leaving messages for Defendant Salisbury, Defendant Bell, and Defendant Justin Snyder, Williamsport's police chief. (Id. ¶ 16). She also contacted the mayor's office. (Id.)

---

[2] The search warrant application references an affidavit of probable cause. (Doc. 35, Ex. A). The affidavit of probable cause is not attached to the search warrant application as filed with the complaint.

2

After the Kelly spoke to an individual at the mayor's office, Defendant Bell contacted the plaintiff. (Id. ¶ 18). Defendant Bell, however, refused to provide information to Kelly about her vehicle and stated that he was getting additional search warrants. (Id. ¶ 19). Although Defendant Bell made that statement to the plaintiff, Defendant Salisbury, the investigating officer, did not apply for any further warrants. (Id. ¶ 21).

Kelly continued to leave messages for Defendant Bell and Defendant Snyder regarding the return of her vehicle. (Id. ¶ 22). She called the mayor's office a second time. (Id. ¶ 23). She called the Lycoming County District Attorney's office. (Id. ¶ 24). When her repeated calls went unanswered, she sought the assistance of counsel. (Id. ¶ 25).

On May 9, 2022, counsel sent correspondence to Chief Snyder at the police administration office by hand delivery. (Id. ¶ 26). Counsel advised that, if the police did not return Kelly's vehicle by May 11, 2022, a motion would be filed in state court for its return. (Id., Ex. B, ECF p. 15). No one from police administration contacted Kelly or Kelly's counsel. (Id. ¶ 27). Kelly's counsel filed the motion, and the Lycoming County Court of Common Pleas scheduled a hearing for June 6, 2022. (Id. ¶¶ 28–30; see also Ex. C, ECF pp. 17–20). But, four days before the hearing, on June 2, 2022, Kelly's vehicle was returned without explanation. (Id. ¶ 31). To date, Kelly has not been compensated for the

time her vehicle stayed in police control after the expiration of the search warrant. (Id. ¶ 41). The state trial court denied Kelly's attempt to recoup attorneys' fees and costs through the motion for return of property. (Id., Ex. C).

Kelly initially filed a Section 1983 action against Defendants Bell, Snyder, and the City of Williamsport in December 2022. The Honorable Chief Judge Matthew W. Brann denied a previous motion to dismiss filed by those defendants. Kelly v. Bell, No. 4:22-CV-01940, 2023 WL 3161643 (M.D. Pa. Apr. 28, 2023). During discovery, Kelly learned that the police department has adopted, in practice, "a policy of complete deference to the officer who has seized a car pursuant to a warrant and permits the officer in his sole discretion to make all decisions related to retention and return of the car to its owner." (Id. ¶ 33). Defendant Salisbury oversaw the investigation. (Id. ¶¶ 8, 20, 34 & Ex. A). Per Kelly, Defendant Salisbury "independently decided, in accordance with the established practice of the Defendant City of Williamsport, that he would continue to deprive [her] of the possession of her car, simply because in his sole judgment he was not done with the car." (Id. ¶ 38).

Kelly filed a second action against Defendant Salisbury and the City of Williamsport in April 2024. Her complaint asserts three claims against these defendants as follows: Count I, a Section 1983 claim against Defendant Salisbury for violation of her Fifth Amendment rights; Count II, a municipal liability

4

claim against the City of Williamsport premised upon its lack of policies and/or training resulting in the practice of allowing investigating officers sole discretion to keep possession of a vehicle after a search warrant has been executed and has expired; and Count III, a Section 1983 claim against the City of Williamsport seeking just compensation for the temporary taking of her property as provided by the Fifth Amendment.

On June 11, 2024, Defendant Salisbury and Defendant City of Williamsport filed the instant motion to dismiss.[3] (Doc. 28). Having been fully briefed, this matter is ripe for disposition.

**Jurisdiction**

Based on the alleged violations of Section 1983, this court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Legal Standard**

Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be

---

[3] By order dated June 13, 2024, the court granted defendants' unopposed motion to consolidate the two related lawsuits. (Doc. 27).

granted. The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion.

To survive a motion to dismiss, "a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Doe v. Princeton Univ., 30 F.4th 335, 341–42 (3d Cir. 2022)(quoting FED. R. CIV. P. 8(a)(2)). That means, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when factual content is pled that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 570). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555).

On a motion to dismiss for failure to state a claim, district courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. See Phillips, 515 F.3d at 233 (citations omitted).

**Analysis**

Defendants move to dismiss each cause of action. Defendant Salisbury argues that he is entitled to qualified immunity on the Section 1983 claim raised against him. The City of Williamsport asserts that the complaint fails to state sufficient facts to proceed with a municipal liability claim. The city also argues that plaintiff has not stated a cognizable claim for violation of her Fifth Amendment rights from the two-month period she was deprived of her vehicle. The court will address these issues in turn.

**1. Qualified Immunity**

Defendant Salisbury asserts that he is entitled to qualified immunity in this action. The doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine "protects 'all but the plainly incompetent or those who knowingly violate the law.' " Mullenix v. Luna, 577 U.S. 7, 12 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

The two-part test to determine whether government officials should receive qualified immunity is well settled. Montemuro v. Jim Thorpe Area Sch. Dist., 99 F.4th 639, 642 (3d Cir. 2024) (citing Anglemeyer v. Ammons, 92 F.4th 184, 188

(3d Cir. 2024)). Under the first prong of the qualified immunity analysis, a court must decide whether the facts that plaintiff has alleged make out a violation of a constitutional right. Pearson v. Callahan, 555 U.S. 223, 232 (2009)(citation omitted). Under the second prong, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. (citation omitted). To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In considering qualified immunity, the court may address the prongs of this test in any order. See Pearson, 555 U.S. at 242. The defendant bears the burden of establishing that he is entitled to qualified immunity. Burns v. PA Dep't of Corr., 642 F.3d 163, 176 (3d Cir. 2011)(citing Harlow, 457 U.S. at 819).

Judge Brann previously addressed this issue when Defendants Bell and Snyder asserted qualified immunity in the prior motion to dismiss. Kelly, 2023 WL 3161643, at *4, n. 54. Per the earlier decision arising from the same set of operative alleged facts, Judge Brann concluded that the officers' alleged actions "violated Kelly's rights secured by the Fifth Amendment and that the unlawfulness of their conduct was clearly established at the time it occurred." Id. (citing Frein v. Pennsylvania State Police, 47 F.4th 247, 251–53 (3d Cir. 2022)). He rejected the argument that Bell and Snyder are entitled to qualified immunity. Id.

8

At this juncture, the court will not address Defendant Salisbury's qualified immunity. The officers subject to Judge Brann's earlier ruling, Defendants Bell and Snyder, are alleged to be a police captain and the chief of police, respectively. Defendant Salisbury, the investigating officer and search warrant affiant, was presumably under the command of Bell and Snyder. Defendants Bell and Salisbury were already deposed following disposition of the earlier motion to dismiss, and their counsel lodged no objection to the deposition of Defendant Snyder during a discovery dispute contemporaneous to the filing of the new action. (Doc. 22, Defs. Mot. for Prot. Order ¶¶ 3, 6-7). Defendants also indicate that discovery is complete and that they intend to file a motion for summary judgment once their motion to dismiss is resolved and the pleadings are closed. (Docs. 31, 33).

Under the law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery unless the plaintiff's allegations state a claim for violation of clearly established law. Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)(citing Harlow, 457 U.S. at 817). Put more simply, "liberal discovery rules are at odds with the doctrine of qualified immunity[.]" Graber v. Dales, 511 F. Supp. 3d 594, 599 (E.D. Pa. 2021). "And qualified immunity may be implicitly denied when a government official otherwise entitled to immunity is nonetheless subjected to 'the burdens of such pretrial matters as discovery.' "

Oliver v. Roquet, 858 F.3d 180, 188 (3d Cir. 2017) (quoting Behrens v. Pelletier, 516 U.S. 299, 308 (1996)).

Here, under some peculiar procedural circumstances, Defendant Salisbury has already been subjected to pretrial discovery burdens. On a motion to dismiss, the evidence obtained from that discovery is not in full view. For example, the complaint contains Defendant Salisbury's search warrant application, but it does not contain his affidavit of probable cause to support that application. (See Doc. 35, Ex. A). The limited details in that warrant application suggest that Kelly's vehicle was involved in some type of incident in Williamsport where 9mm firearms were discharged. (Id.) Details into the investigation of that incident are crucial in evaluating the prongs of the qualified immunity test. See United States v. Chambers, 192 F.3d 374, 376 (3d Cir. 1999)(citations omitted)("It is well settled that the government is permitted to seize evidence for use in investigation and trial, but that such property must be returned once criminal proceedings have concluded, unless it is contraband or subject to forfeiture."). The court will thus preserve the issue and defer ruling on Defendant Salisbury's qualified immunity arguments until the time of summary judgment.

### 2. Kelly's Claims Against the City of Williamsport

Kelly asserts two claims against the City of Williamsport. Count II advances a Section 1983 claim premised upon Monell v. Dep't of Soc. Servs. of

City of New York, 436 U.S. 658, 694 (1978) for the city's alleged violation of her Fifth Amendment rights. While Count III also asserts a violation of Section 1983, Kelly alleges that the city directly violated the Fifth Amendment's Takings Clause by temporarily taking her vehicle for public use without paying her for it.

### a. Kelly's Monell Claim

Count II of Kelly's complaint asserts a Monell claim against the City of Williamsport. A local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Monell, 436 U.S. at 694. Rather, liability extends when injuries are inflicted by "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy[.]" Id.

The city asserts that Kelly failed to plead sufficient facts to state a Monell claim, that is, she failed to identify a municipal policy or custom that was the basis of her alleged constitutional deprivation. Kelly counters that she has asserted a viable claim premised on a lack of written policies relative to vehicle returns after the expiration of a search warrant. (See Doc. 30, Pl. Br. in Opp. at 12). In that void, per Kelly, the City of Williamsport has adopted a custom or practice of deferring to the investigating officer as to the length of time to keep the vehicle, even after the search warrant has been executed, regardless of whether items have been found. (See Doc. 35, Compl. ¶¶ 47–52). Moreover,

according to the plaintiff, the City of Williamsport did not train its officers regarding any obligation to return a vehicle after a search warrant was executed, which caused Kelly's Fifth Amendment rights to be violated. (Id. ¶¶ 52–53).

Kelly has thus pled a policy or custom of deference to investigating officers and a failure to train officers about citizens' personal property rights in the vehicle search and seizure context, which led to a violation of her rights by Defendant Salisbury. "Failure to adopt a policy" Monell claims require a showing that the injuries were caused by inaction that manifests a deliberate indifference like the showing required in the failure-to-train context. See Semerod v. Siko, No. 4:24-CV-1165, 2024 WL 4374973, at *3 & n. 37 (M.D. Pa. Oct. 2, 2024)(Brann, J.)(citing Forrest v. Parry, 930 F.3d 93, 105–06 (3d Cir. 2019)(additional citations omitted).

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). To satisfy Section 1983, a municipality's failure to train its police officers must amount "to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)(footnote omitted).

"A plaintiff sufficiently pleads deliberate indifference by showing that '(1) municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019)(brackets omitted)(quoting Doe v. Luzerne Cnty., 660 F.3d 169, 180 (3d Cir. 2011); Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999)).

"Establishing municipal liability on a failure to train claim under § 1983 is difficult." Reitz v. Cnty. of Bucks, 125 F.3d 139, 145 (3d Cir. 1997). A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference. Connick, 563 U.S. at 62 (citing Board of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997)). However, "'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." Id. (quoting Bryan Cnty., 520 U.S. at 409). "[A] single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." Bryan Cnty., 520 U.S. at 409 (citing City of Canton, 489 U.S. at 390 & n. 10).

Kelly does not allege that this is a single incident situation. Rather, she has alleged that the City of Williamsport received complaints related to the failure of its police department to return vehicles after the expiration of search warrants. (No. 4:24cv608, Doc. 1, Compl. ¶¶ 47). Accordingly, for the purposes of a motion to dismiss, plaintiff has made a sufficient allegation regarding a pattern of alleged constitutional violations.[4] Defendants' motion to dismiss Count II will thus be denied.

### b. Kelly's Takings Clause Claim

Count III of Kelly's complaint asserts a separate cause of action premised upon the Takings Clause of the Fifth Amendment. That provision "states that 'private property [shall not] be taken for public use, without just compensation.' " Knick v. Twp. of Scott, Pa., 588 U.S. 180, 184 (2019).

The parties dispute the legal framework as to how such claims proceed against a municipality. Defendants assert that "in order to establish liability under the Fifth Amendment against the [c]ity, [p]laintiff would have to establish or set forth [what] was required in Monell[.]" (Doc. 29, Defs. Br. in Supp. at 7). Kelly counters that liability against the city under the Takings Clause exists independently: "Count III is not a Monell claim, it is a claim against a local

---

[4] Kelly has offered no other facts about these complaints other than those related to her own case. At summary judgment, Kelly's allegations must be supported by the evidence.

14

government seeking compensation for a 'taking' without just compensation." (Doc. 30, Pl. Br. in Opp. at 10).

In Knick, the United States Supreme Court concluded that "a government violates the Takings Clause when it takes property without compensation, and that a property owner may bring a Fifth Amendment claim under § 1983 at that time." 588 U.S. at 202. In the same paragraph, the majority stated, "Takings claims against local governments should be handled the same as other claims under the Bill of Rights." Id. These references indicate that Kelly's path forward against the City of Williamsport goes through Section 1983 and Monell.

But the Knick Court also discussed the "self-executing" character of the Takings Clause "with respect to compensation," that is, "a property owner has a constitutional claim for just compensation at the time of the taking." 588 U.S. at 192 (citing First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal., 482 U.S. 304, 316 (1987)("First English")). Moreover, as stated in First English, claims for just compensation are grounded in the Constitution itself. 482 U.S. at 315 (discussing Jacobs v. United States, 290 U.S. 13, 16 (1933)). Some district courts have read Knick, First English, and Jacobs to mean that a Takings Clause claim is not dependent on the Section 1983 cause of action and that a plaintiff need not establish the requirements for municipal liability under Monell. See Baker v. City of McKinney, Tex, 601 F. Supp. 3d 124, 146 (E.D. Tex.

2022), rev'd and remanded on other grounds, 84 F.4th 378 (5th Cir. 2023), pet. for cert. denied, No. 23-1363, 2024 WL 4874818 (U.S. Nov. 25, 2024).

Similarly, the petitioners in DeVillier v. Texas asserted that "the just-compensation requirement of the Takings Clause is self-executing and that statutory recognition is not necessary for takings claims because they are grounded in the Constitution itself." 601 U.S. 285, 291 (2024)(citing First English, 482 U.S. at 315)(brackets omitted).  After the Fifth Circuit disagreed with that theory, the Supreme Court granted certiorari "to decide whether a property owner may sue for just compensation directly under the Takings Clause." Id. at 290.

The Supreme Court, however, did not answer that question. See Vargo v. Casey, No. 20-CV-1109-JDP, --- F. Supp. 3d ----, 2024 WL 4794692, at *8–*9 (W.D. Wis. Nov. 14, 2024)(Peterson, J.)(discussing DeVillier, 601 U.S. at 288–90, 292).  Rather, Justice Thomas, writing for a unanimous Court, focused on whether the petitioners had an already-existing cause of action under state law to proceed with their Takings Clause claim. DeVillier, 601 U.S. at 292–93.  They did. Id. at 293.  The state defendant, Texas, also agreed at oral argument that it would not oppose the petitioners' request to amend their complaint to assert that state law cause of action. Id.  So, the decision of the Fifth Circuit was vacated, and the case was remanded for that state law claim to be asserted. Id.

DeVillier, like the Supreme Court's other precedents, "[did] not cleanly answer the question [of] whether a plaintiff has a cause of action arising directly under the Takings Clause." Id. at 292–93. But it did make clear that "constitutional rights are generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose." Id. at 291 (citing 42 U.S.C. § 1983).

Kelly already has an independent cause of action designed to remedy the City of Williamsport's alleged violations of her Takings Clause rights, Section 1983. Indeed, her Takings Clause claim in Count III explicitly relies upon Section 1983 in the heading of that cause of action.

As for whether a Takings Clause claim under Section 1983 needs to comport with Monell and its progeny, the contours of a Section 1983 claim against a municipality are well-settled. Absent further guidance from the Third Circuit Court of Appeals and the United States Supreme Court, Kelly must set forth a plausible municipal liability claim to proceed pursuant to that statute for alleged Takings Clause violations. See Knick, 588 U.S. at 202 ("Takings claims against local governments should be handled the same as other claims under the Bill of Rights."). The court concludes above that she has in Count II. Nonetheless, Count III is redundant to Count II and will be dismissed as such.

## Conclusion

For the reasons set forth above, defendants' motion to dismiss will be granted in part and denied in part. Defendants' motion is granted as to Count III. Otherwise, the motion is denied with the issue of Defendant Salisbury's qualified immunity preserved for summary judgment. An appropriate order follows.

Date: 12/13/24

JUDGE JULIA K. MUNLEY
United States District Court